IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RUSSELL CARRINGTON,

    *Petitioner*,

    v.

UNITED STATES OF AMERICA,

    *Defendant*.

Criminal No. ELH-13-151
Civil No. ELH-18-1910

## MEMORANDUM OPINION

This Memorandum Opinion resolves a motion filed under 28 U.S.C. § 2255 by Russell Carrington, who is self-represented. *See* ECF 2112. The motion, filed on June 25, 2018, is supported by a lengthy memorandum (ECF 2112-1) (collectively, the "Petition") and several exhibits. The government opposes the Petition. ECF 2119 ("Opposition"). Carrington replied (ECF 2120, "Reply") and submitted additional exhibits.

In his Reply, Carrington asserted, for the first time, that after his sentencing in this case, a State conviction underlying his career offender designation was subsequently expunged by a Maryland court. And, he complains that his lawyer failed to raise this issue on appeal. Because Carrington raised a new issue in his Reply (*see* ECF 2112), by Order of December 13, 2018, I asked the government to respond. ECF 2139. The government's response is docketed at ECF 2141. Carrington again replied. ECF 2145.

Under 28 U.S.C. § 2255(b), a hearing is required "[u]nless the motion and the files and records of the case conclusively show the prisoner is entitled to no relief . . . ." This is such a case. No hearing is necessary. For the reasons that follow, I shall deny the Petition.

# I.     Procedural Background[1]

At the relevant time, Carrington was a member of the Black Guerilla Family ("BGF"), a street and prison gang. "From 2007 through 2013, the Baltimore City Detention Center ['BCDC'] was home to a sprawling criminal enterprise led by the [BGF]." *United States v. Carrington*, 700 Fed. App'x 224, 226 (4th Cir. 2017).

Carrington, an inmate at BCDC, was one of 44 defendants federally indicted in 2013 on charges that included Racketeering Conspiracy under the Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and conspiracy to distribute and possess with intent to distribute controlled dangerous substances. ECF 418 (Superseding Indictment); ECF 869 (Second Superseding Indictment). As indicated, the charges were rooted in the pervasive criminal enterprise at BCDC, a facility for pretrial detainees, involving the smuggling of narcotics, tobacco, and cell phones. The defendants generally consisted of two groups: BGF members who were inmates at BCDC, and corrupt correctional officers who worked at BCDC and helped to facilitate the criminal enterprise. The government claims that Carrington was a "high-ranking member of BGF . . . ." ECF 2119 at 2. [2]

Prior to trial, on October 22, 2014, the government filed a notice of intent to seek an enhanced minimum sentence as to Carrington, pursuant to 21 U.S.C. § 851. ECF 1110. This alerted Petitioner that a maximum sentence of thirty years would be sought if he was found to have at least one prior conviction for a felony drug offense.

---

[1] This case was assigned to me at the time of indictment. I ruled on the numerous pretrial motions, took many guilty pleas from codefendants, and conducted sentencing proceedings for those defendants who did not proceed to trial. However, Judge J. Frederick Motz presided at the trial, and therefore he imposed sentence on Carrington.

[2] Citations refer to the electronic pagination as it appears on CM/ECF.

Although most of the defendants pleaded guilty, Carrington was one of eight defendants who proceeded to a jury trial, at which Judge J. Frederick Motz presided. The trial began on November 17, 2014, and on February 5, 2015, the jury returned a verdict of guilty as to Carrington and four other defendants. ECF 1425; ECF 1426. Two of the five convicted defendants were BGF gang members who had been inmates at BCDC and three were correctional officers who worked at BCDC. In particular, Carrington was convicted of racketeering conspiracy (Count One) and conspiracy to distribute drugs (Count Two), *i.e.*, oxycodone, buprenorphine, marijuana, and alprazolam. *Id.*

The Presentence Report ("PSR") was filed on March 16, 2015. ECF 1558.[3] Carrington's sentencing was held on March 27, 2015. ECF 1584. At sentencing, the Court determined that Carrington had an offense level of 34 and a criminal history category of VI. ECF 1901 (Sentencing Transcript) at 17; ECF 1609 (Statement of Reasons); *see also* ECF 1558, ¶¶ 15-22. Therefore, Carrington had an advisory sentencing guidelines range of 262 to 327 months of imprisonment. ECF 1558, ¶ 108.

Notably, according to the PSR, Carrington had a total offense level of 34 after applying enhancements to his base offense level. Alternatively, he also had an offense level of 34 because he was a career offender. And, he had a criminal history category of VI, based on his criminal history points and also because he was a career offender. *See* ECF 1558, ¶¶ 13-24, 44-47.

The government sought a total sentence of 300 months (25 years) of incarceration. ECF 1901 at 6. However, the district court varied downward on the basis of the factors under 18 U.S.C. § 3553(a), and imposed a total sentence of 210 months (18 years) imprisonment, *i.e.*, 52 months

---

[3] An Amended Presentence Report was filed on March 30, 2015, and is docketed at ECF 1588. The corrections are not material to the issues here. *See* ECF 1901 at 3-4.

below the bottom of Carrington's advisory sentencing guideline range, and 90 months below the government's recommendation. ECF 1608 (Judgment, docketed April 8, 2015); ECF 1609 (Statement of Reasons); ECF 1901 at 17.

On March 28, 2015, Petitioner filed a Notice of Appeal. ECF 1586. In a consolidated appeal, involving the other defendants convicted at trial, the Fourth Circuit affirmed Petitioner's convictions and sentence by way of an opinion issued on July 25, 2017. ECF 1992; *see United States v. Carrington, et al.*, 700 Fed. App'x 224 (4th Cir. 2017). The Fourth Circuit concluded that the evidence was sufficient to support Petitioner's racketeering conviction and that the district court did not err in admitting certain coconspirator testimony. *Id*. at 232 n. 2. However, as to one codefendant, Joseph Young, the Court upheld the convictions but vacated the sentence and remanded for a new sentencing. This is discussed, *infra*.

## II.    Standard of Review

Carrington is self represented. Therefore, this Court must construe his pleadings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Alley v. Yadkin County Sheriff Dept.*, 698 Fed. App'x 141 (4th Cir. Oct. 5, 2017) (citing *Erickson* for the proposition that "[p]ro se complaints and pleadings, however inartfully pleaded, must be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers").

Under 28 U.S.C. § 2255, a prisoner may seek to vacate, set aside, or correct his sentence on four grounds:  (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  *See Hill v. United States*, 368 U.S. 424, 426-27 (1962) (citing 28 U.S.C. § 2255).  "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a

fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 422 U.S. 178, 185 (1979) (quoting *Hill*, 368 U.S. at 428).

The scope of a § 2255 collateral attack is far narrower than an appeal, and a "'collateral challenge may not do service for an appeal.'" *Foster v. Chatman*, ___ U.S. ___, 136 S. Ct. 1737, 1758 (2016) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). Thus, any failure to raise a claim on direct appeal constitutes a procedural default that bars presentation of the claim in a § 2255 petition unless the petitioner can demonstrate "cause and prejudice" or "actual innocence." *See Dretke v. Haley*, 541 U.S. 386, 393 (2004): *Reed v. Farley*, 512 U.S. 339 (1994); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *see also Bousley v. United States*, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (internal quotations and citations omitted); *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010); *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999). In contrast, any "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003).

Generally, the rule governing procedural default of claims brought under § 2255 precludes consideration of any contentions that "'could have been but were not pursued on direct appeal, [unless] the movant . . . show[s] cause and actual prejudice resulting from the errors of which he complains.'" *Pettiford*, 612 F.3d at 280 (quoting *Mikalajunas*, 186 F.3d at 492-93). Under the "cause and prejudice" standard, the petitioner must show: (1) cause for not raising the claim of error on direct appeal; and (2) actual prejudice from the alleged error. *Bousley*, 523 U.S. at 622; *see also Dretke*, 541 U.S. at 393; *Massaro*, 538 U.S. at 505; *Reed*, 512 U.S. at 354 ("the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice

resulting from the alleged violation.'"); *Murray v. Carrier*, 477 U.S. at 485, 496; *Frady*, 456 U.S. at 167-68; *Mikalajunas*, 186 F.3d at 492-93.

In order to show cause for not raising the claim of error on direct appeal, a petitioner must prove that "some objective factor external to the defense such as the novelty of the claim or a denial of effective assistance of counsel" impeded their counsel's efforts to raise the issue earlier. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *see Carrier*, 477 U.S. at 492 ("[C]ause . . . requires a showing of some external impediment preventing counsel from constructing or raising the claim."); *Mikalajunas*, 186 F.3d at 493 (movant must demonstrate "something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel"). Additionally, the alleged error cannot simply create a possibility of prejudice, but must be proven to work to the petitioner's "*actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original). Pursuant to the Supreme Court's ruling in *Carrier*, 477 U.S. at 494, prejudice does not support relief of a procedural default in the absence of a showing of cause. *See also Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982).

The actual innocence exception "only applies in limited circumstances." *United States v. Jones*, 758 F.3d 579, 583 (4th Cir. 2014). Indeed, it must be "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . ." *Carrier*, 477 U.S. at 496.

In order to show "actual innocence," the petitioner "must demonstrate actual factual innocence of the offense of conviction, *i.e.*, that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." *Mikalajunas*, 186 F.3d at 494 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339

(1992)); *see also Bousley*, 523 U.S. at 623. Notably, the petitioner must meet this burden by clear and convincing evidence. *Mikalajunas*, 186 F.3d at 494. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Jones*, 758 F.3d at 583; *see Bousley*, 523 U.S. at 623.

As the Fourth Circuit recently said, "A valid actual innocence claim 'requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.'" *Finch v. McKoy*, ___ F.3d ___, 2019 WL 324667, at *4 (4th Cir. Jan. 25, 2019) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). Moreover, a petitioner must "'demonstrate that the totality of the evidence would prevent any reasonable juror from finding him guilty beyond a reasonable doubt, such that his incarceration is a miscarriage of justice.'" *Finch*, 2019 WL 324667, at *4 (quoting *Teleguz v. Pearson*, 689 F.3d 322, 329 (4th Cir. 2012)). It is an "exacting standard," based on a "'holistic judgment about all the evidence'. . . ." *Finch*, at *5 (quoting *House v. Bell*, 547 U.S. 518, 539 (2006)).

As to claims that were previously litigated on direct appeal, they are generally not cognizable under § 2255. *Schlup*, 513 U.S. at 318-19. In *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976), the Court said that a petitioner "will not be allowed to recast, under guise of a collateral attack, questions fully considered" and decided on direct appeal. *See also Abbamonte v. United States*, 160 F.3d 922, 924 (2d Cir. 1998).

However, failure to raise on direct appeal a claim of ineffective assistance of counsel is not regarded as procedurally defaulted. *Massaro v. United States*, 538 U.S. 500, 509 (2003). Thus, such a claim is not barred under § 2255.

### III. Discussion

Carrington asserts several grounds for relief. First, he claims that his lawyer provided ineffective assistance of counsel by failing to object to the drug quantity in the Presentence Report, and to the court's failure to make particularized findings as to drug quantity. ECF 212 3-6 at 4. And, he contends that his attorney was ineffective for failure to object to a four-level enhancement for role in the offense. *Id.* at 3. In addition, he complains that his attorney was ineffective because he failed to request an informant instruction. *Id.* at 10. He also suggests an issue as to sufficiency of the evidence.

In addition, in Carrington's Reply (ECF 2120), he asserts that he no longer qualifies as a career offender, due to a post-sentencing expungement, and therefore his lawyer was ineffective for "failing to seek corrective measures . . . ." *Id.* at 1. In particular, Carrington claims that one of his two prior State convictions, used to establish his criminal history category, was expunged about ten months after his federal sentencing. *Id.* at 9. Therefore, he claims that his lawyer should have raised the matter on appeal or sought a remand for resentencing. *Id.*

### A. Ineffective Assistance of Counsel

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, ____ U.S. ____, 137 S. Ct. 759, 775 (2017). Ineffective assistance of counsel is a well recognized basis for relief under 28 U.S.C. § 2255. *See generally Missouri v. Frye,* 566 U.S. 134 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).

To mount a successful challenge under 28 U.S.C. § 2255, based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668, 687–88 (1984). *See Chaidez v. United States,* 568 U.S.

342, 348 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Lafler,* 566 U.S. at 162-63; *Hill v. Lockhart,* 474 U.S. 52 (1985); *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011); *see, e.g., United States v. Baker,* 719 F.3d 313, 318 (4th Cir. 2013).

The first prong is known as the "performance prong," which relates to professional competence. The petitioner must show that his attorney's performance fell "below an objective standard of reasonableness," measured by "prevailing professional norms." *Strickland,* 466 U.S. at 688; *see United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017). The burden is on the petitioner to establish "'that counsel made errors so serious that "counsel" was not functioning as the 'counsel' guaranteed by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (quoting *Strickland*, 466 U.S. at 687).

As the Supreme Court recently reiterated, the "first prong sets a high bar." *Buck*, 137 S. Ct. at 775; *see also Powell*, 850 F.3d at 149. "The lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Buck*, 137 S.Ct. at 775 (citation omitted). Consequently, the performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison,* 389 F.3d 450, 457 (4th Cir. 2004)).

"Keenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland,* 446 U.S. at 689); *see Harrington*, 562 U.S. at 104; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015). Indeed, "the *Strickland* standard must be applied with scrupulous

care," *Harrington*, 562 U.S. at 105, and "the standard of judging counsel's representation is a most deferential one." *Id.*

In this regard, the Court must attempt to avoid the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting Strickland, 466 U.S. at 690). Thus, the petitioner "must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).

Second, the petitioner must show that his attorney's deficient performance "prejudiced" her defense. *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Id.*

The *Padilla* Court said, 559 U.S. at 371: "Surmounting *Strickland's* high bar is never an easy task." Accordingly, a petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). Failure to satisfy either prong is fatal to a petitioner's claim. As a result,

"there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

**B. The expungement**

Petitioner claims that he no longer qualifies as a career offender because after his sentencing one of the two prior convictions used to establish his career offender status was expunged by the Circuit Court for Baltimore City. ECF 2120 at 3. In support of this contention, Carrington points to an "Order For Expungement of Records," signed by Baltimore City Circuit Court Judge Jeannie Hong on January 7, 2016. *See* ECF 2120-2. It states that Petitioner was "found to be entitled to expungement of police records pertaining to the arrest, detention, or confinement … on or about 04/13/2011 [in] Baltimore City, Maryland, by a law enforcement officer of the BCPD" with respect to criminal Case Number 811227004. ECF 2120-2 at 1. Petitioner has also submitted six certificates of compliance (ECF 2120-2 at 2-7), showing that certain state agencies complied with the expungement order. All six certificates reference the same Case Number: 811227004.

Pursuant to U.S.S.G. § 4B1.1(a), a defendant is a career offender if:

> (1) The defendant was at least eighteen years old at the time [he] committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

The expungement did not alter or affect the prior convictions listed in Petitioner's Presentence Report as career offender predicates. *See* ECF 1558. The prior felony convictions that resulted in Petitioner's career offender designation are discussed in paragraphs 32 and 41 of the PSR, and were identified, respectively, as case number 102322044 (PSR, ¶ 32) and case number 112067011 (PSR, ¶ 41), both in the Circuit Court for Baltimore City.

As to the conviction referenced in ¶ 32, distribution of cocaine, Carrington was arrested on October 19, 2002, and he entered a plea of guilty on August 24, 2004. He received a sentence of time served. *Id.* The offense referenced in paragraph 41 reflects an arrest date of April 13, 2011, and a guilty plea on September 23, 2013, to the offenses of possession with intent to distribute heroin and possession with intent to distribute cocaine. Carrington received concurrent sentences of nine years, with five years suspended. *Id.*

In all, Carrington had a total criminal score of 18 criminal history points, which established a criminal history category of VI. ECF 1558, ¶ 46. And, as a career offender, he also had a criminal history category of VI. *Id.* ¶ 47; *see* U.S.S.G. § 4B1.1(b).

Case number 811227004, the offense that was expunged, is listed in the PSR in ¶ 69, in the section concerning "Other Alleged Criminal Conduct." It reflects an arrest date of April 13, 2011, but the PSR expressly states that the case was nol prossed. *Id.* Thus, it was not referenced as a conviction, nor was it part of the career offender calculus.

The government recognizes that "Petitioner's confusion is understandable." ECF 2141 at 6. This is because his convictions for possession with intent to distribute heroin and cocaine in case number 112067011 (PSR, ¶ 41) resulted from an arrest on April 13, 2011, the same date for the offense listed on the expungement order. In other words, case number 811227004 also resulted from an arrest on April 13, 2011. *See* PSR, ¶ 69.

Carrington's conviction in case number 112067011 appears to have arisen from the same conduct that resulted in his arrest in case number 811227004. Indeed, paragraph 69 of the PSR states, with respect to case number 811227004, as follows:

> The statement of Probable Cause reflects that on April 13, 2011, at 12:25 p.m., police observed Russell Carrington and Godfrey Hicks standing in an alley in the 400 block of Lanvale Street. Hicks handed Carrington money. Carrington [then] walked into the yard of 433 Lanvale Street and opened a dryer vent. He removed

two plastic bags and retrieved small objects (suspected CDS) from both bags. Carrington returned the bags and walked back to Hicks. They noticed police and ran into the alley. Carrington threw the suspected CDS into the yard at 443 Lanvale Street. Carrington and Hicks were both stopped and arrested. Recovered from 443 Lanvale Street were one vial of cocaine and one capsule of heroin. Recovered from the dryer vent were two plastic bags – one containing ten vials of cocaine and one containing seven capsules of heroin. Recovered from Carrington was $29.

As to case number 112067011, the PSR reports, *inter alia*: "The Indictment charges that on April 13, 2011, in the 400 block of Lanvale Street, the defendant distributed heroin and cocaine to Godfrey Hicks […]." PSR, ¶ 41. Case number 811227004 therefore appears to have been a duplicate record of the arrest in case number 112067011.

But, Petitioner's predicate convictions remain undisturbed. The expungement had no bearing on the conviction referenced in the PSR at ¶ 41, which is designated as Case number 112067011. The government points out that the convictions in case number 112067011 remain available for public view in the Maryland Judiciary Case Search website. ECF 2141 at 7. In contrast, a search for case number 811227004 reveals no public record. *Id.*

Notably, Carrington is not yet eligible under Maryland law for expungement of the convictions in case 112067011. Md. Code (2018 Repl. Vol.), §§ 10-101 – 10-110 of the Criminal Procedure Article ("C.P.") govern expungement of police and court records. Under C.P. § 10-110(c)(3), the time for filing a petition for expungement of a felony is no earlier than "15 years after the person satisfies the sentence or sentences imposed for all convictions for which expungement is requested, including parole, probation, or mandatory supervision." And, at the time of the expungement in case 811227004, fifteen years had not passed in case 112067011. *See also* ECF 2141-1.

Accordingly, Petitioner remains a career offender. It follows that defense counsel was not ineffective for failing to pursue this claim on appeal. *See* ECF 2120 at 3-4.

In any event, a challenge to Petitioner's designation as a career offender is not cognizable under 28 U.S.C. § 2255. *See United States v. Foote*, 784 F.3d 931, 940 (4th Cir.), *cert. denied*, 135 S. Ct. 2850 (2015); *see also Dennis v. United States*, CCB-10-715, 2017 WL 1807088, at *5 (D. Md. May 5, 2017).

The recent case of *Beckles v. United States*, ___ U.S. ___ , 137 S. Ct. 886 (2017), provides guidance, although it is not on all fours. There, the defendant was convicted of possession of a firearm by a convicted felon, under 18 U.S.C. § 922(g)(1), and was sentenced as a career offender. In his post-conviction petition, the defendant relied on *Johnson v. United States*, 576 U.S. ___, 135 S. Ct. 2551 (2015), to argue that a predicate offense did not qualify for career offender consideration because it was not a "crime of violence."

The Supreme Court ruled that the advisory sentencing guidelines "are not subject to a vagueness challenge under the Due Process Clause" and that U.S.S.G. § 4B1.2(a)'s residual clause is not void for vagueness. 137 S. Ct. at 895. The Court also observed that the sentencing guidelines "merely guide the district court's discretion . . . ." *Id.* at 894. The Court stated, *id.* at 895: "[T]he Guidelines advise sentencing courts how to exercise their discretion within the bounds established by Congress."

Significantly, even if Carrington were not a career offender, his offense level and criminal history category would have remained the same: 34/VI. This is because Carrington had a base offense level of 26, according to the drug quantity attributable to him (ECF 1588, ¶ 26) and, with the various enhancements that also applied, his offense level was increased to 34. *See id.*, ¶¶ 16-21. But, as a career offender, he also had an offense level of 34. *Id.* ¶ 22. Moreover, based on the number of his prior convictions, Carrington had a total of 18 criminal history points. *Id.* ¶ 46. This

equated to a criminal history category of VI, which is the same as that of a career offender. *See* U.S.S.G. § 4B1.1(b).

Therefore, the expungement is of no legal consequence with regard to Carrington's advisory sentencing guidelines range.

### C. The Drug Quantity

Carrington complains that his lawyer was ineffective because he did not object to the drug quantity specified in the PSR, *i.e.*, that the equivalent of 400 to 700 kilograms of marijuana was attributable to him. ECF 2112-1 at 3. Moreover, he contends that defense counsel was ineffective because he did not object to Judge Motz's failure to resolve a factual dispute as to drug quantity.

In support, Carrington points to the ruling of the Fourth Circuit, vacating the sentence of codefendant Joseph Young, on the ground that Judge Motz failed to resolve certain factual disputes regarding the calculation of Young's advisory sentencing guideline range, including as to drug quantity. ECF 2112-1 at 6.

Petitioner also includes as exhibits several letters that he received from his CJA attorney. In one of the letters, dated July 31, 2017 (ECF 2112-4 at 1-2), defense counsel referenced a conversation he had on that date with Carrington concerning the Fourth Circuit's decision in the case, in which the Court upheld all of the convictions but remanded for the resentencing of Mr. Young. Defense counsel stated, *id.* at 1: "Your sentencing issue, in my opinion, is best heard under 28 U.S.C. § 2255. I say that because Judge Motz now knows that he and I both erred on that point." But, defense counsel suggested that it might be difficult for Mr. Carrington "to show that any harm was suffered (*i.e.*, prejudice)." *Id.* Moreover, he opined that, in his view, a certiorari petition to the Supreme Court "**would be frivolous** and has little chance of being granted." *Id.* (boldface in original).

I agree with the government that Carrington "cannot show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   ECF 2119 at 7; *see Strickland*, 466 U.S. at 694. This is because Petitioner qualified as a career offender, which means his offense level did not turn on the drug quantity attributable to him or an enhancement based on his role in the conspiracy.

As a career offender, Carrington's base offense level was calculated pursuant to § 4B1.1, which assigns levels according to the statutory maximum for the offense. His offense level was 34 under § 4B1.1, because the statutory maximum sentence as to Count Two was thirty years, pursuant to 21 U.S.C. § 841(b)(1)(C).  ECF 1558, ¶ 22.  Under 21 U.S.C. § 841(b)(1)(C), "[i]f any person commits such a violation *after a prior conviction for a felony drug offense* has become final, such person shall be sentenced to a term of imprisonment of not more than 30 years."[4]

Moreover, a central difference between the sentencings of Young and Carrington concerned their presentence reports.  As noted, with respect to Carrington, the PSR assigned a base offense level of 26, based on the drug quantity, under U.S.S.G. § 2D1.1(c)(7).[5]  *See* ECF 1558, ¶

---

[4] As the government notes, ECF 2119 at 8, Carrington "should not have been surprised by this criminal history-based enhancement, as the government filed a notice pursuant to 21 U.S.C. § 851 on October 22, 2014, well before trial commenced."  *See* ECF 1110.

[5] Specifically, the PSR states, ¶ 8:

Given the volume of Percocet pills that Carrington and his partners distributed, Carrington qualifies for an offense level 26. Carrington could reasonably foresee that BGF smuggled marijuana, oxycodone, buprenorphine (Suboxone), alprazolam (Xanax), and other drugs into BCDC and that these drugs can all be converted to marijuana by application of the Drug Equivalency Table in USSG §2D1.1. An offense level 26 corresponds to 400 to 700 kilograms of marijuana, and it also corresponds to 59.7 to 104 grams of oxycodone, the active ingredient in Percocet and Oxycontin pills. 59.7 grams is 59,700 milligrams, or 1,990 30-milligram pills, or 5,970 10-milligram pills. Carrington qualifies for an offense level 26 taking into account all of the different drugs charged in Count 1 that he could reasonably foresee in the BGF conspiracy at BCDC.

15. With enhancements, the offense level increased to a 34. *See* ¶¶ 16, 17, 19. Alternatively, the offense level was increased to 34, due to Carrington's career offender status. *See id.*, ¶ 22. In contrast, the Presentence Report for Young expressly noted a dispute as to drug quantity, to be resolved by the judge. ECF 1643, ¶ 35. And, the Fourth Circuit was of the view that Judge Motz did not resolve that dispute.

Petitioner's claim that his counsel was ineffective for not making the same objections made by codefendant Young has no merit. As the Fourth Circuit stated, "Young's PSR recognizes that Young had raised factual disputes regarding both 'the drug amount attributed to the defendant and the defendant's role within the conspiracy,' and expressly declines to resolve those disputes, instead 'defer[ring] to the Court for resolution[.]" *Carrington*, 700 F. App'x at 234. The district court erroneously adopted factual findings that were not contained in the PSR.

In contrast, as to Carrington, the PSR assigned a drug quantity that yielded a base offense level of 26, before adjustements. Carrington's PSR reflects, *inter alia*, a four-level upward adjustment based on his role as "an organizer or leader of criminal activity that involved five or more participants." PSR, ¶ 19. But, the drug quantity and the enhancements ultimately were of no consequence, because Carrington was also a career offender. Put another way, Petitioner's offense level would not have changed, even if trial counsel had pursued an objection to the role enhancement attributed to him or to the drug quantity. Petitioner's guidelines and sentence were based on his career offender designation.

Nor was this a matter for the jury, as Carrington suggests. In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court said: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. Thus, *Apprendi* specifically excludes

the fact of a prior conviction.  *Id.*  Here, Petitioner was sentenced within the thirty-year maximum established by § 841(b)(1)(C).

Petitioner's 210-month sentence was below the twenty-year maximum that would have applied without any enhancement.  Petitioner's sentence was also 52 months below the bottom of his advisory guideline range.  *See* ECF 1609 (Statement of Reasons).

As such, even if there was any error, it would not affect Petitioner's substantial rights.  *See United States v. Brooks*, 524 F.3d 549, 553-54 (4th Cir. 2008) ("In the absence of a jury determination of this threshold quantity, or an admission […] as to the drug quantity attributable to [the defendant], his sentence must fall within the default penalty subsection[…]").  Petitioner has not shown that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694.[6]

In sum, Petitioner's guideline range and sentence were based on his criminal history and status as a career offender, and not by the factual determinations that he challenges here.

### D.  The informant jury instruction

Petitioner alleges that his attorney provided ineffective assistance for failing to request an "informant" jury instruction.  ECF 2112-1 at 11.  According to petitioner, he was prejudiced by his counsel's failure to request the informant jury instruction because "[t]here was [no] evidence to back the government's claims of racketeering conspiracy or a drug conspiracy." *Id*. Further, he argues that "a general witness credibility question is not sufficiently cautionary for informants

---

[6] Petitioner mentions that counsel's ineffectiveness "caused the Honorable J. Frederick Motz to err in numerous ways of violating Movant's sentence." ECF 2112-1 at 4. The government responds to Petitioner's claims only as to those concerning the alleged ineffective assistance of counsel.  Any claim of error by the court should have been brought on appeal and is therefore procedurally barred at this stage. *See Marchante-Rivas v. United States*, DKC 10-0063, 2013 WL 1104071, at *5 (D. Md. Mar. 14, 2013) (a claim of sentencing error by the court is "not cognizable in the context of a § 2255 motion, as it may only be raised on direct appeal.").

because of special concerns about the incentive that they have to fabricate information for their own benefit." *Id*. at 32-33.

Specifically, Petitioner asserts that his counsel should have requested the following instruction:

> The testimony of an informant who provides evidence against a defendant for pay, or for immunity from punishment, or for personal advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must examine whether the informant's testimony has been affected by interest or by prejudice against a defendant.

ECF 2112-1 at 31-32.

As noted earlier, to establish ineffective assistance of counsel a petitioner must show that trial counsel's performance was deficient and the deficiency prejudiced the defendant. *Strickland*, 466 U.S. at 687. Petitioner has not met this high bar because the jury was appropriately instructed to carefully scrutinize testimony of any accomplices.

Although the Fourth Circuit has generally approved of the use of an "informant instruction," it has declined to "decide the question of whether and when an informant instruction is required." *United States v. Luck*, 611 F.3d 183, 187-188 (4th Cir. 2010). To be sure, "'[t]he general rule is that accomplice instructions are preferred when accomplices testify against defendants, due to the inherent unreliability of this testimony. . . .'" *United States v. Harvey*, 159 F. App'x 451, 458 (4th Cir. 2005) (quoting *United States v. McCabe*, 720 F.2d 951, 955 (7th Cir. 1983)). But, the Court added that "'the failure to give such an instruction is not reversible error.'" *Id.* (emphasis added in *Harvey*).

The government cites a decision of this Court, in which the Court said that the "accomplice instructions constituted 'comprehensive instruction to the jury concerning evaluation of the testimony of an *informant* or coconspirator', even though the instructions did not include the word

informant." ECF 2119 at 12 (citing *Cain v. United States*, ELH-12-019, 2017 WL 3840258, at

*14 (D. Md. Sept. 1, 2017), appeal dismissed, 711 F. App'x 164 (4th Cir. 2018) (emphasis added

by government). As a result, this Court found the petitioner's allegation that his trial counsel was

ineffective for failing to request an informant instruction to be "devoid of merit." *Cain*, 2017 WL

3840258, at *13.

In *Cain*, I noted that my jury instruction, which I quoted, was "more expansive [and]

comprehensive" than the standard informant instruction. But, I did not state that an accomplice

instruction is always an adequate substitute for an informant instruction.

Nonetheless, I agree with the government that the omission of the word "informant" is not

dispositive. *See*, *e.g.*, *Williams v. United States*, 2012 WL 380360, at *3 (E.D.N.C. Feb. 6, 2012)

("The fact that the court did not use the word 'informant' in its instructions is of no moment. The

tenor of the instruction is that the jury should receive and examine the referenced testimony with

great care. Petitioner suffered no prejudice as a result of counsel's failure to request an informant

instruction . . . ."); *see also Barrington v. United States*, 2012 WL 13076839, at *6 (E.D. Va. Aug.

9, 2012) ("Even if trial counsel's failure to request an informant instruction resulted in deficient

performance, Petitioner was not prejudiced as the Court itself instructed the jury on testimony of

accomplices, informers, immunity, and plea agreements."); *McCullers v. United States*, 2012 WL

1942068, at *9 (E.D. Va. May 29, 2012) ("McCullers has made no showing that Melton's

performance was deficient by not requesting an informant instruction beyond the accomplice

instruction read by the court.").

Judge Motz carefully instructed the jury on witness credibility, in general, and on the

credibility of accomplice testimony, specifically, as follows:

> You, as jurors, are the sole judges of the credibility of the witnesses and the weight
> their testimony deserves. You should carefully scrutinize the testimony given by

each witness and the circumstances under which each witness has testified, and every matter in evidence which tends to indicate whether the witness is worthy of belief. Consider each witness' intelligence, motive and state of mind, and his/her demeanor and manner while on the stand. Consider also any relation each witness may bear to either side of the case; whether a witness has demonstrated any bias, prejudice or hostility toward a party; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness is either supported or contradicted by other evidence.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony. Two or more persons witnessing an incident may see or hear it differently, and innocent misrecollection, like failure of recollection, is not an uncommon experience. A witness may be discredited or impeached, not only by contradictory evidence, but also by evidence that at other times the witness has made statements which are inconsistent with his/her present testimony. Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of differing witnesses, should be considered by you, but, in weighing their effect, you should consider whether the inconsistencies or discrepancies pertain to a matter of importance or an unimportant detail, and whether you believe the discrepancy or inconsistency results from innocent error or willful falsehood.

Jury instructions, ECF 1423, at 8-9.

Judge Motz also gave an additional instruction concerning the credibility of accomplice testimony:

You have heard witnesses who testified that they were actually involved in planning and carrying out the crime(s) charged in the indictment. There has been a great deal said about these so-called accomplice witnesses in the summations of counsel and whether or not you should believe them.

The government argues, as it is permitted to do, that it must take the witnesses as it finds them. It argues that only people who themselves take part in criminal activity have the knowledge required to show criminal behavior by others. For those very reasons, the law allows the use of accomplice testimony. However, it is also the case that *accomplice testimony is of such nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe.*

ECF 1423 at 9 (emphasis added). Judge Motz further instructed the jury that testimony "from a witness who may have been addicted to or using drugs when the events they observed took place

[…] must be examined with greater caution than is necessary regarding the testimony of other witnesses." *Id.*

The jury instructions were adequate to address any issues of credibility that might be implicated by a government informant. Petitioner has not overcome the "presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Even if trial counsel was deficient, it is not reasonably probable that Petitioner was prejudiced or that the outcome of the trial would have been different had an informant jury instruction been given.

**E. Sufficiency of the Evidence.**

To the extent that Petitioner seeks to challenge the sufficiency of evidence used to convict him (*see* ECF 2112-1 at 11-35), he fares no better. The sufficiency of evidence for Petitioner's racketeering conviction and the admission of coconspirator testimony were litigated on appeal. *Carrington*, 700 F. App'x at 232 n. 2. The Fourth Circuit said, *id.*:

> Carrington argues that he is entitled to a mistrial [because, *inter alia*,] there was insufficient evidence to support the jury's finding that he engaged in the predicate racketeering offense of bribery under Maryland law (though the jury also found two other predicate racketeering offenses, sufficient to sustain a RICO conspiracy conviction); and the district court erred in admitting certain co-conspirator testimony […]. We have reviewed the relevant record and considered each of these arguments, and find the claims to be without merit.

Petitioner is not permitted to "recast, under the guise of collateral attack" issues considered on appeal. *Boeckenhaupt*, 537 F.2d at 1183; *see also United States v. Davis*, 406 F.3d 505, 511 (8th Cir. 2005) ("We find the present claim to be the same claim in different clothes, and we will not reconsider the issue on collateral review."); *Anderson v. United States*, 468 F. Supp. 2d 780, 785 (D. Md. 2007) ("It is well-settled law that an issue that has been determined on direct appeal may not be relitigated in a § 2255 motion.").

More than a dozen witnesses testified at trial as to Carrington's involvement in the conspiracy. His trial attorney endeavored to attack the government's witnesses on cross-examination. ECF 2112-1 at 13, 14, 15, 17, 21, 22, 23, 24, 26, 29, 30, 31. After a 30-day trial the jury was instructed to "carefully scrutinize the testimony given by each witness," and was also instructed that "accomplice testimony is of such nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe." Jury instructions, ECF 1423, at 8-9. The jury found that Petitioner was guilty, beyond a reasonable doubt.

## IV. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant. A COA is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). In other words, unless a COA is issued, a petitioner may not appeal the court's decision in a § 2255 proceeding.[7] 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, ___ U.S. ___, 137 S. Ct. at 773. Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

---

[7] The denial of a COA by the district court does not preclude Petitioner from seeking a COA from the appellate court.

Petitioner has not made a substantial showing of the denial of his constitutional rights.

Therefore, I decline to issue a COA.

An Order follows.

Date:   February 13, 2019                                            /s/
                                              Ellen L. Hollander
                                              United States District Judge